# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| SUSAN L KESTEL, | : | Case No. 3:16-cv-382 |
| --- | --- | --- |
| Plaintiff, | : | District Judge Thomas M Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| NANCY A BERRYHILL<br>Commissioner Of The Social Security<br>Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATION[1]

## I.  Introduction

Plaintiff Susan Kestel brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Income and Supplemental Security Income. The decisions to deny Plaintiff's applications occurred mainly in the decision of Administrative Law Judge (ALJ) Theodore W. Grippo who concluded that Plaintiff was not under a benefits-qualifying disability.

This case is presently before the Court for review of ALJ Grippo's decision by way of Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #7).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. Background

Plaintiff asserts that she became disabled starting on June 7, 2010 when she was 44 years old. Her age places her in the category of a "younger" person under Social Security law. She has earned a high school GED. Her employment history included work as an administrative assistant, a front-desk clerk, and a cashier.

Before issuing his non-disability decision, ALJ Grippo held a hearing during which Plaintiff testified. She explained that she experienced a mental breakdown when her mother died in 2010. The main reason she cannot work is anxiety and, on some days, depression. She testified:

> [E]veryday, I just—I'm fearful, and I don't exactly know why. I just feel— I'm just nervous and fearful throughout the day. And then depression on some days. Some days the depression is worse than the anxiety, and sometimes the opposite. Sometimes I have a mixture of both. Depression … is no fun at all, because all I want to do is [lie] around and I don't care about anything, but then the anxiety—when that happens, that is just so stressful, and it takes a tol[l] on me, like physically even. But just being fearful all the time.
>
> I guess … I would say it's like if you were alone in a house and you heard a burglar. That fear right there, I would have that fear all the time and not know why, even though there wasn't really a burglar in the house, I would just feel like there was or feel that nervous… all the time.

(Doc. #7, *PageID* #111-12). She has been receiving mental-health treatment since her mother died.

Plaintiff further testified that she had chronic pain all over her body. Her weight at the time of the ALJ's hearing was 260 pounds. She is four feet nine inches tall. Her weight has, at times fluctuated up and down by 20 pounds.

2

Plaintiff stated that she "tore all four of my ACLs [anterior cruciate ligaments] out in my right knee." *Id*. at 113. She has a lot of arthritis. She has a torn or frayed meniscus in her left knee, which is very painful. Both her knees are hyperextended, by which she means that they bend the wrong way. Her right knee "wants to snap out of place all the time." *Id*. It feels to her that her legs could just break when she walks. She uses a cane to help her walk. It was prescribed by her primary-care physician, Dr. Kumar. *Id*. at 115.

Plaintiff also has diabetes mellitus with diabetic neuropathy. She treats it with medication (Metformin) and insulin. She further testified that she has hypothyroidism, a heart murmur, an enlarged heart, incontinence, an enlarged liver (fatty liver disease), and an enlarged spleen.

During the day, Plaintiff does not do "much of anything really." *Id*. at 119. She wants to lie down and sleep all the time. Every day she takes a three-hour nap. She vacuums every four to six weeks, although she has a hard time gripping the vacuum cleaner. She does her own laundry and goes to the store once a month. She has difficulty lifting and carrying a 5 to 10 pound bag of potatoes. She has difficulty standing more the 5 minutes before needing to sit. She can walk about 3/4 of a block before taking a break. She does not think she can work a full-time job. *Id*. at 121

Plaintiff has provided a detailed review of her medical records. Defendant relies on the ALJ's description of the medical records. For both reasons, there is no need for a detailed reiteration of the factual background in this case.

### III. "Disability" and The ALJ's Decision

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined by the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both benefit programs. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id.* at 469-70.

As noted previously, it fell to ALJ Grippo to evaluate the evidence connected to Plaintiff's benefit applications. He did so by conducting the 5-step sequential evaluation mandated by Social Security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). He ultimately concluded that Plaintiff was not under a benefits-qualifying disability based on the following findings:

- Step 1: Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (June 7, 2010).

- Step 2: Her severe impairments include "diabetes mellitus, spine disorder, dysfunction of major joints, left carpal tunnel syndrome, chronic obstructive pulmonary disease." (Doc. #7, *PageID* #77).

- Step 3: Her impairments did not meet or equal the criteria of an impairment in the Commissioner's Listings.[2]

---

[2] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: She could perform light work "except for the following limitations: She can never climb ladders, ropes, or scaffolds. She can frequently climb ramps, climb stairs, stoop, kneel, crouch, and crawl. Handling with the left upper extremity is limited to frequent [sic]. She must avoid concentrated exposure to pulmonary irritants such as smoke, fumes, dust, gases, and poor ventilation. She must avoid even moderate exposure to hazards such as moving machinery and unprotected heights." *Id.* at 80.

Step 4: She can perform her past relevant work as an administrative assistant, a front-desk clerk, and a cashier.

*Id.* at 87. The ALJ's sequential evaluation stopped at Step 4 because Plaintif's ability to perform her past relevant work led the ALJ to conclude that she was not under a benefits-qualifying disability.

## IV. Judicial Review

The Social Security Administration's denial of Plaintiff's applications for benefits – here, embodied in ALJ Grippo's decision—is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings. *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Instead, substantial evidence supports the ALJ's factual findings when a "'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

V.  **Discussion**

   A.  **Mental Impairments**

Plaintiff contends that the ALJ erred at Step 2 of his sequential evaluation by failing to find that her anxiety and depression constitute severe mental impairments because each condition has more than a minimal effect or her ability to perform basic work activities. Plaintiff also argues that after the ALJ found no severe mental impairments, he erred by simply disregarding her mental limitations. The ALJ was required, Plaintiff maintains, to consider both her severe and non-severe impairments when assessing her residual functional capacity.

Defendant argues that the ALJ reasonably assessed Plaintiff's mental impairments and properly concluded that the impairments did not cause more than a minimal limitation in her ability to perform basic work activities. Defendant contends that the mere diagnoses on which Plaintiff relies say nothing about the severity of her mental-health conditions. Defendant also points out, in some detail, that at Step 2, the ALJ evaluated Plaintiff's functioning in the applicable 4 broad area functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of

6

decompensation. Defendant maintains that substantial evidence supports the ALJ's findings in each of these areas of mental functioning.

Step 2 of the sequential analysis—determining whether the claimant has a severe impairment—creates "a *de minimis* hurdle in the disability determination process.... Under the ... *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988). Generally, an ALJ does not commit reversible error by finding a non-severe impairment in two circumstances: (1) the ALJ also found that claimant has at least one severe impairment; and (2) the ALJ considered both the severe and non-severe impairments at the remaining Steps in the sequential evaluation. *See Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir.1987); *see also Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007). Indeed, "once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining [S]teps." *Pompa v. Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) (citation omitted).

In the present case, the ALJ found at Step 2 of his sequential evaluation that Plaintiff had several severe physical impairments but lacked any severe mental impairment. Plaintiff says this constituted error because the record is replete with evidence of her depression and anxiety and related symptoms plus diagnoses of dysthymic disorder, post-traumatic stress disorder, and rule-out bipolar disorder. However, a diagnosis alone does not indicate the level of severity of a condition in any

7

particular individual. *See Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). Further, while the ALJ may not have expressly discussed all the symptoms that Plaintiff presently cites, he discussed many of them and found that her mental conditions did not cause more than minimal limitations based on the record as a whole. *See* Doc. #7, *PageID* #s 77-78 (considering Plaintiff's history of anxiety, memory problems, low mood, loss of interest).

The ALJ also considered Plaintiff's mental impairments at Step 2 by evaluating her functioning within the four broad areas described by the regulations: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. §404.1520a(c)(3). The ALJ found that Plaintiff had no limitations in activities of daily living and no more than mild limitations in social functioning and concentration persistence, or pace; he also found no evidence of episodes of decompensation of extended duration. (Doc. #7, *PageID* #78). Based on his negative findings in each area, the ALJ appropriately concluded that Plaintiff's mental impairments were not severe. *See* 20 C.F.R. §§ 404.1520a(d)(1) (if the degree of limitation in the first three areas is "none" or "mild," and there is no limitation in the fourth area, the agency will generally conclude that a claimant's impairment(s) is not severe). Additionally, substantial evidence supports the ALJ's findings. He considered that with regard to daily activities, Plaintiff did not require reminders for personal care, grooming, or taking medication. *Id*. at 78, 425. She was able to prepare her own meals without assistance and she could shop for food. *Id*. at 78, 435. With regard to social functioning, the ALJ considered that Plaintiff lived with a friend and had no problems

8

getting along with family, friends, and neighbors. *Id*. at 78, 423, 428. She was able to use public transportation, and she got rides from friends and family. *Id*. at 78, 426, 436.

With regard to Plaintiff's concentration, persistence, and pace, the ALJ noted that Plaintiff reported that she could drive, did not need reminders to go places, and did not need anyone to accompany her when she went out. *Id*. at 78, 426-27. She could handle money when she shopped. *Id*. at 78, 435. The ALJ considered that, according to Plaintiff, she spent her days studying about diabetes and how to take care of herself. *Id*. at 78, 424. In addition, during a consultative mental examination with Martin Johnson, Ph.D., her thought processes were reported to be logical and coherent. *Id*. at 78, 957. Plaintiff also reported that she used a computer to do research. *Id*. at 958. The ALJ reasonably considered such activity indicated some ability to pay attention and focus. *Id*. at 78. The ALJ also considered that Plaintiff maintained sufficient attention and concentration during the hearing and the consultative examinations to answer questions appropriately. *Id*. at 78. Based on the above reports of Plaintiff's activities and abilities, the ALJ reasonably found that the record failed to support a finding of more than mild difficulties in the broad functional areas.

Furthermore, the ALJ properly considered that in January 2013, Plaintiff reported taking no medication for her mental conditions, and she indicated that she had met with a therapist on only one occasion. *Id*. at 77, 955. Further, the ALJ considered that after she began mental-health treatment in June 2013, she missed or canceled many mental-health appointments and was discharged from treatment by September 2013. *Id*. at 77, 978-1003. Although she restarted therapy in November 2013, she continued to miss or cancel

9

appointments. *Id*. at 77, 1093-1107, 1296-1318.

Plaintiff relies on the medical opinions from the state agency psychological consultants and other medical evidence to support her claim that the ALJ erred by failing to find she had a severe mental impairment. But, because substantial evidence supports the ALJ's findings at Step 2, the presence of other contrary evidence—even if it is substantial—is analytically insignificant. *See Blakley,* 581 F.3d at 406 ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" (citation omitted)).

Accordingly, for the above reasons, the ALJ did not err at Step 2 and reasonably found that Plaintiff's mental impairments did not significantly limit her ability to perform basic work activities. Additionally, the ALJ further considered Plaintiff's mental impairments at later Steps in his sequential analysis. *See id*. at 83, 85-86. He therefore did not screen out Plaintiff's disability claim or mental-health impairments at Step 2. Consequently, the Step-2 error Plaintiff identifies, if deemed an error, was harmless. *See Fisk v. Astrue*, 253 F. App'x 580, 583, 2007 WL 3325869, at *4 (6th Cir. 2007) ("when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" (quoting, in part, *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987)).

**B.** **Obesity**

Plaintiff contends that the ALJ failed to classify her obesity as a severe or non-

severe impairment. This, in Plaintiff's view, leads by default to the conclusion that the ALJ found her obesity was not a medically determinable impairment. She emphasizes that, in conflict with the regulations, the ALJ did not analyze or determine whether her obesity met or equaled the Listings or the potential impact her obesity has on her work abilities and residual functional capacity.

Contrary to Plaintiff's arguments, the ALJ considered Plaintiff's obesity throughout his decision. Although he did not list obesity as a severe impairment at Step 2 of his evaluation, he clearly found it to be so in his later discussion. He expressly stated, "while the claimant's obesity is a severe impairment, it does not alone or in combination with other impairments, meet or medically equal a listed impairment" (Doc. #7, *PageID* #80). Furthermore, after finding obesity to be a severe impairment, the ALJ evaluated its impact on Plaintiff's residual functional capacity, consistent with the directives in Soc. Sec. Ruling, 02-1p, 2002 WL 34686281 (Sept. 12, 2002). (Doc. #7, *PageID* # 80, 83-84). For instance, the ALJ observed that Plaintiff's physical impairments were likely complicated by obesity, including her reported symptoms of joint pain, and it would cause her to have difficulty with exertional activities. (Doc. #7, *PageID* #s 83-84). He then limited Plaintiff to light exertional work with additional postural limitations to account for difficulties caused by her obesity. *Id*. In addition, the ALJ provided environmental limitations such as avoiding moderate exposure to hazards, including hazardous machinery and unprotected heights, to further account for Plaintiff's obesity. *Id*. at 84. Thus, contrary to Plaintiff's contentions, the ALJ found Plaintiff's obesity

caused limitations in her ability to perform basic work activities and reasonably accounted for its impact in his assessment of her residual functional capacity.

## C. Another Agency's Decision

Relying on Soc. Sec. R. 06-03p, 2006 WL 2329939 (Aug. 9, 2006), Plaintiff contends that the ALJ erred by failing to even mention that the Ohio Department of Job and Family Services (ODJFS) found her unemployable and awarded her interim financial assistance while her application for Supplemental Security Income was pending.

Plaintiff is correct that SSR 06-03p requires adjudicators to explain the consideration given to a disability decision from another government agency, the ALJ's failure to do so here did not harm Plaintiff.[3] "[E]vidence of a disability determination by another governmental or nongovernmental agency cannot be ignored and must be considered." Soc. Sec. R. 06-03p, 2006 WL 2329939, *6 . ALJs, however, are not bound by disability determinations by other governmental or nongovernmental agencies. *Id*. at *7.

Plaintiff is also correct that the ALJ erred by not mentioning the ODJFS's decision to award her interim benefits because she was unemployable. *See* Doc. #7, *PageID* #s 333, 369; *see also* Soc. Sec. R. 06-03p, 2006 WL 2329939, *6-*7. Defendant, however, is correct that the ALJ's mistake was harmless. *See Rabbers*, 582 F.3d at 654 (citations and internal quotation omitted) ("Generally . . . we review decisions of administrative agencies for harmless error.") . The ODJFS's decision indicated a period of

---

[3] The Social Security Administration rescinded Ruling 06-3p in March 2017. Yet, it still applies in the present case because it was in effect on the date of the ALJ's decision.

unemployability for less than 12 months. This is seen in the check-marked box indicating that Plaintiff's limitations were expected to last "[b]etween 9 months and 11 months." (Doc. #7, *PageID* #561). Thus, given that the determination was based on a February 2011 examination and given the length of disability indicated, the ALJ's failure to expressly discuss the determination was reasonable or at most harmless. This is so because the Social Security Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Because the ODJFS decision was based on her unemployability for between 9 and 11 months, rather than a continuous period of at least 12 months, even if the ALJ had considered it, it would not have mandated the finding that Plaintiff was under a "disability" as defined by the Social Security. This is all the more so because Ruling 06-3p did not mandate the ALJ to adopt the ODJFS's unemployability finding.

Accordingly, the ALJ's error in not considering the ODJFS's decision was harmless.

    D.    **Noncompliance With Prescribed Treatment**

Plaintiff argues that the ALJ failed to comply with Soc. Sec. R. 82-59, 1982 WL 31384 (1982) when finding that she was non-compliant with prescribed treatment. The specific error Plaintiff finds is that the ALJ relied on her non-compliance without considering whether all 4 non-compliance conditions exist.

13

Social Security Ruling 82-59 permits the Social Security Administration to deny benefits to an individual "who would otherwise be found to be under a disability but who fails without justifiable cause to follow treatment prescribed by a treating source…." Ruling 82-59, 1982 WL 31384, *1. Although Plaintiff correctly identifies the 4 non-compliance conditions,[4] she overlooks that an ALJ may consider a claimant's non-compliance in the assessment of a claimant's subjective complaints. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) ("The ALJ used the evidence of Holley's noncompliance solely to weigh the credibility of Holley's subjective claims of pain. [Ruling] 82-59 does not restrict the use of evidence of noncompliance, it merely delineates the reasons that the Social Security Administration may deny benefits to an otherwise disabled person because they fail to comply with their doctor's prescribed treatment."); *see also Barncord v. Comm'r Soc. Sec.*, No. 2L16cv389, 2017 WL 4160886, at *4 (S.D. Ohio 2017) (Graham, D.J.) ("[Ruling] 96-7p states that 'the individual's statements may be less credible ... if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."); *Robertson v. Comm'r of Soc. Sec.*, No. 4:14cv35, 2015 WL 5022145, *6 (E.D. Tenn. 2015) ("An ALJ may consider noncompliance with treatment as a credibility factor."). Here, the ALJ considered Plaintiff's noncompliance in addressing her subjective allegations. (Doc. #7, *PageID* #83). He found that Plaintiff's lack of

---

[4] The four non-compliance conditions are, according to Ruling 82-59: "1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA)…; and 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and 4. The evidence of record discloses that there has been refusal to follow prescribed treatment."

mental-health treatment and her noncompliance with the treatment she was provided undermined the severity of those conditions. *See id*. at 77, 83; *see e.g., PageID* #s 978-1003, 1296). Further, the ALJ noted that Plaintiff was not always compliant with taking her diabetic mediation, but that when she did take it, that condition was controlled. *Id*. at 81, 83; *see e.g., PageID* #s 911, 1018-21.

Additionally, Plaintiff's noncompliance was only one of the factors considered by the ALJ when assessing Plaintiff's subjective allegations. The ALJ properly took into account Plaintiff's activities and found that they were not as limiting as one would expect given her allegations of disabling symptoms and limitations. *Id*. at 83; *see* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities are a factor considered in evaluating the extent of a claimant's subjective allegations). For instance, the ALJ considered that in July 2014, Plaintiff reported to a physician that she hurt herself moving boxes. (Doc. #7, *PageID* #s 83, 1322). The ALJ noted that, when he questioned her about that injury at the hearing, Plaintiff testified that she was "jumping" on and off a truck that day moving boxes of household goods. *Id*. at 83, 134.

The ALJ also considered that the evidence did not support Plaintiff's allegations of disabling mental limitations. Substantial evidence supports the ALJ's determination through the combination of the following information. Plaintiff did not require reminders for personal care, grooming, or taking medication. *Id*. at 78, 425. She was able to prepare her own meals without assistance and shop for food. *Id*. at 78, 435. She lived with a friend and had no problems getting along with family, friends, and neighbors. *Id*. at 78, 423, 428. She was able to use public transportation, and she also got rides from

15

friends and family. *Id*. at 78, 426, 436. Plaintiff also reported that she drove, did not need reminders to go places, and did not need anyone to accompany her when she went out. *Id*. at 78, 426-27. She was able to handle money when she shopped, and she reported that she used a computer to do research. *Id*. at 78, 435, 958.

Accordingly, Plaintiff's contentions regarding the ALJ's consideration of non-compliance lack merit.

**IT IS THEREFORE RECOMMENDED THAT:**

The ALJ's non-disability decision on May 29, 2015 be affirmed.

January 30, 2018                                         *s/Sharon L. Ovington*
                                                                    Sharon L. Ovington
                                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).